GERTRUDE H. CORBETT, RESPONDENT, v. FERDINAND SMERALDO, APPELLANT.

Submitted December 6, 1917—Decided February 7, 1918.

An automobile was stored with the owner of a garage at an agreed price for care and storage. The defendant's night man in charge of the garage took the automobile out for his own purposes and damaged it. *Held*, that there was a breach of the contract to store, and the plaintiff was entitled to recover.

On appeal from the First Judicial District Court of Essex county.

The plaintiff stored an automobile with defendant in his garage, at an agreed price for care and storage. The night man in charge of the garage took the automobile out for his own purposes while intoxicated and damaged it. There was evidence from which a jury might infer that the defendant thereafter agreed to repair the car at his own expense, and also that the night man had been intoxicated before, although a year had elapsed since he had taken a drink.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the respondent, *James P. Mylod.*

For the appellant, *Edward R. McGlynn.*

The opinion of the court was delivered by

SWAYZE, J.   We think this case does not involve the question of the master's responsibility for the tortious acts of his servants.   It involves rather the question of the master's liability for breach of his own contract.   In that respect, it resembles *Haver* v. *Central Railroad Co.,* 62 *N. J. L.* 282.   No doubt the liability of a common carrier is greater than the liability of an ordinary bailee—even if a bailee for hire—but in both cases the crucial question is, What were the terms of the contract?   Those terms are rarely expressed at length.   Much must be left to implication and be determined in accordance with the business usages and the customs of the times.   Like all questions of fact, the terms of the contract where not fully expressed must be left to the jury.   This disposes of the complaint of the appellant that there should have been a nonsuit. The jury could hardly avoid the inference that the automobile was left with the defendant for storage in his garage.   Storage involved keeping the automobile there and not permitting it to go out without the plaintiff's authority.   If the defendant chose to intrust that duty to his night man, he was liable, not because the night man was negligent, but because the defendant himself had been guilty of a breach of his contract of storage.   A defendant has even been held liable where he contracted to warehouse goods at a particular place but took them to another place, where they were destroyed by fire and the plaintiff lost the benefit of his insurance.   *Lilley* v. *Doubleday, L. R., 7 Q. B. D.* 510; 51 *L. J. Q. B.* 310.   There was a breach of the contract to store as soon as the automobile was taken out of the garage.   For what subsequently happened, the defendant might or might not be liable under the rule of *respondeat superior.*   It is not important, in view of the way the case was tried, whether the injury to the automo-

bile was the proximate result of the breach of contract. That question was not raised at the trial and is not presented on this appeal. The mere breach of contract prevented a nonsuit and the plaintiff would in any event have been entitled to nominal damages. Perhaps this view would occur to the mind more readily if the subject of the bailment had been several automobiles, stored by a dealer awaiting sale, but the legal principle is the same in a case like the present, of a bailment of an automobile stored by the owner and to be held subject to his orders.

We are referred to *Firemen's Fund Insurance Co. v. Schreiber,* 150 *Wis.* 42; *Anno. Cas.* 1913-E. 823, as holding a contrary view. The authority of that case is much shaken by the dissent of three out of seven judges, and by the fact that the lower court was reversed. Giving it, however, all the force that can legitimately be claimed, it is not in point. The case did not arise between bailor and bailee and did not involve the terms of the contract. It was a suit by an insurance company against the bailee for the tort of his servant, and the defendant's liability was necessarily dependent on the application of the rule of *respondeat superior.* The English case of *Sanderson v. Collins* (1904), 1 *K. B.* 628, is more nearly in point. There the plaintiff lent a dog-cart to the defendant while the plaintiff was repairing the defendant's carriage. The dog-cart was lent for use, not deposited for storage; and was used without defendant's authority by his servant. There was no duty on the part of the defendant to store it.

There is another reason why a nonsuit was properly refused. There was evidence that the night man was intoxicated when he took the automobile from the garage, but it was said by the defendant that he had not had a drink for about a year. It was also proved that there were frequent changes in the men employed at the garage for this work. We cannot say that it conclusively appears that the defendant had exercised reasonable care in the selection of his servants. This would have been a jury question if defendant's liability had depended on negligence.

What we have said disposes of the trial errors. The conversation with defendant as to paying for repairs, lending the plaintiff a car while she was deprived of the use of her own, the introduction of defendant's bill-heads, all had a bearing as admissions by the defendant tending to prove the terms of the contract. The number of different night men had at least some bearing on the question of defendant's care in selecting his employes. We do not see how arrangements with others than the plaintiff for storing and washing of cars in the garage can tend to prove what the contract was with plaintiff, and think this evidence was properly rejected. On the other hand, we think it was material to prove that Denny was in charge in the nighttime when neither the defendant nor his son was at the garage.

We find no error in the record and the judgment is affirmed, with costs.