## Todd *v.* Natchez-Eola Hotels Co.

(Division A. Nov. 26, 1934. Suggestion of Error Overruled Feb. 4, 1935.)

[157 So. 703. No. 31414.]

Brandon & Brandon, of Natchez, for appellant.

**Engle & Laub**, of Natchez, for appellee.

Argued orally by **Gerard Brandon,** for appellant, and by **S. B. Laub,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Todd, the appellant, owned a Chevrolet coupe. Todd was a lawyer, as also was McCann, who was attending to business for the appellant and who drove the appellant's car in the course of his business. McCann drove from a point in Louisiana to Natchez, Mississippi, parked his car at the curb in front of the hotel, registered at the desk, and was assigned a room in the hotel about eleven o'clock at night. He inquired of the clerk at the desk as to whether or not the hotel had a parking place for cars, and was informed that the guests of the hotel were allowed to park their cars in the rear of the hotel; that thereupon he drove the car to the rear, in a driveway, and left it in the care of a negro, Eddie Hays, who was

in charge of the parking lot or space adjacent and to the rear of the hotel; and that he was requested by Hays to leave the key of the car with him—which he did—until the cars already parked therein could be moved so as to allow space for the parking of his car. This occurred on Friday night. On Saturday night he called for his car, but found that it was not in the parking lot. Complaint was made to the police, and shortly afterwards the car was found wrecked and badly damaged at an intersection of a street in Natchez.

It is undisputed that the car was taken from the parking space of the hotel by Eddie Hays while on duty; that he drove an unknown gentleman to a point and was paid therefor; that while returning in the direction of the hotel, he took aboard some colored women; that thereafter a collision ensued whereby Todd's car was wrecked; and that Hays disappeared for a time, but was offered as a witness for appellee.

The parking lot of the hotel is adjacent to and in the rear of the hotel; part of it is owned by the hotel and part rented from another by the hotel for parking purposes.

McCann, the only witness offered by the appellant, testified that the total damages to the car and to Todd, the appellant, by reason of failure to deliver the car to him, was in excess of seven hundred fifty dollars. The car was insured against theft, and McCann, acting for Todd, effected a settlement with the insurance company by which he collected four hundred dollars. Todd was allowed to retain the wrecked car, and traded it in for a new car; one hundred seventy-five dollars being allowed on the old car. McCann said that he saw no signs displayed limiting the liability of the hotel as to parking cars, and that he looked for such signs, as he had seen them displayed in other hotels. There was evidence to the effect that McCann was drinking when he arrived at the hotel, and subsequently.

The insurance policy was not offered in evidence, although McCann testified that there was a contract of subrogation written therein, the contents of which he did not know, but that no contract of subrogation was executed; because he effectuated a settlement with the insurance company, received a check therefor, and delivered the contract of insurance to the agent or adjuster with whom he settled.

On behalf of the hotel company, it was shown that the parking lot, as described, was in charge of Eddie Hays, and no other person was employed for that purpose; that his business was to park cars in the lot; that he was instructed not to allow the removal of a car except upon delivery to the owner; and under no circumstances was he or any other person, except the owner, authorized to remove a car from the parking space. The manager and clerk of the hotel did not know that the car had been removed by Eddie Hays. The manager testified that he paid Hays no wages, and that whatever remuneration he received was from the tips of the hotel guests. Although the hotel manager spoke of Eddie Hays as being employed by the hotel company, after this occurrence he was "excluded" from the parking lot, and no longer served in any capacity for the hotel. Before employing Hays, the hotel manager found him to be trustworthy and competent upon investigation of his character and ability.

There were signs posted in the lobby of the hotel and in the parking lot, by which the hotel undertook to limit or disclaim liability for cars parked therein. The manager stated that the hotel was forced to furnish parking space for the cars of its guests, but that it made no extra charge for such service.

This is an action at law for the recovery of damages occasioned by the loss of the car, and upon the conclusion

of all evidence, the court below granted the appellee, the hotel company, a peremptory instruction.

It is established beyond question that the relation of innkeeper and guest existed between the hotel and Mc-Cann, appellant's employee, at the time the car was placed in charge of Eddie Hays. It is also uncontroverted that no other person than Eddie Hays had charge or control of cars delivered by hotel guests to him for safekeeping in the parking lot. That Eddie Hays took the car without authority and used it at a profit to himself, and to joy ride with two negro women, is also uncontroverted.

The appellant, Todd, insists that the appellee, being an innkeeper, furnished the lot for the convenience of its guests, as it did any other convenience connected with the hotel; that the relation of innkeeper and guest being established, under the common law the innkeeper was an insurer of the automobile (32 C. J., secs. 35, 36, p. 545; Id., sec. 45, pp. 549, 550); and that section 5108, Code of 1930, does not limit the liability of the innkeeper as to an automobile.

Appellant further insists that if the rigid rule of the common law is relaxed as to the relation of innkeeper and guest, under the circumstances of this case at least there was the relation of bailor and bailee; parking space for his car being furnished as a part of the service paid for by him to the hotel company for his room.

It is the contention of the appellee mainly that: (1) Eddie Hays was not the servant of the hotel company; and (2) that if he were held to be the servant, the removal of the car by him was unauthorized by the master, and that the removal of the car for the purpose of taking a passenger for a ride and for the purpose of a joy ride for himself was for purposes of his own and a complete deviation from the scope of his employment.

We are not required in this case to construe section 5108. Neither are we required to decide whether the common-law rule is applicable to the facts of this case, making an innkeeper an insurer, or whether an innkeeper was a mere bailee for hire, because, in either case, according to the evidence in this case, if Eddie Hays was a servant or agent of the hotel company, whether as bailee or innkeeper, the hotel company was liable for a breach of its implied contract in failing to return to Todd or his agent the automobile stored for safe-keeping. The parking lot was part of the hotel, under the facts of this case; the automobile was placed completely and absolutely under the control of Eddie Hays, the man to whom the clerk had referred McCann. We think the record demonstrates that he was a servant or agent for that purpose of the hotel company as much as the clerk at the desk, the bell boys, or any other employee of the hotel. The fact that they allowed him to receive his pay through tips of the hotel guests does not seem to militate against the relation of master and servant. For aught the guest knew, all the employees may have depended on tips from guests for their remuneration.

Was Eddie Hays acting within the scope of his employment at the time he took the automobile from the hotel premises to carry a passenger for hire, and, on his return trip, to engage in a joy ride? The duty of the hotel company in this case was at least to use ordinary care to see that the car was delivered to its owner. Can it escape liability by putting some third person of its selection in absolute control of the property for safe-keeping, to act in its stead, and that third person fails to discharge such duty? We think not. Under the circumstances the appellee bound itself, by furnishing parking space for the cars of its guests, to at least take reasonable care of the property and to safely keep it, so far

as its own act was concerned. The hotel company and its agent, Hays, were both bound to keep the car; they were bound not to destroy it. The agent stepped aside from his duty to the guest the moment he took the car from its place of safe-keeping, and violated his duty to the bailor. If the innkeeper, under the circumstances, had taken the car, there would be no question of liability; consequently it cannot escape liability by saying that Hays departed from instructions in the course of his employment. The agent affirmatively breached the implied contract when he took the car from its place of safety. When a principal owes a duty to a third person and delegates that duty to a servant of his, he cannot escape responsibility if the agent or servant fails to perform that duty, whether that failure be willful or negligent. So far as the guest here was concerned, Hays was clothed with full authority over the car apparently.

Appellee cites the case of Firemen's Fund Insurance Co. v. Schreiber, 150 Wis. 42, 135 N. W. 507, 45 L. R. A. (N. S.), p. 314, Ann. Cas. 1913E, 823, which holds, under similar circumstances, that the act of the servant in removing the car from the garage was not within the scope or course of his employment. There is one important difference, and that is, the servant in that case was not especially delegated by the master to see to the safekeeping of the car, his duty was merely to wash cars and incidentally protect them while on duty. Having completed his work of washing and polishing cars, the servant, at a time when he was not on duty, went to a nearby lunch counter and while there fell in with an acquaintenance and went back to the garage and got a car to take a ride, during which ride the car was wrecked and damaged. We decline to adopt the implications of the case. See Corbett v. Smeraldo, 91 N. J. Law, 29, 102 A. 889; McLain v. West Virginia Automobile Co., 72

W. Va. 738, 79 S. E. 731, 48 L. R. A. (N. S.) 561, Ann. Cas. 1915D, 956; and annotations, 15 A. L. R., pp. 684, 687.

We do not think from the record that there was proof of subrogation in this case. It is not unusual for an insurance company to waive its right of subrogation, whether by contract or in equity, and permit the insured to retain the salvage, which includes a right of action against a third party for damages to the insured property. In the case at bar, it affirmatively appears that the wrecked automobile was retained by Todd and not taken over by the insurance company. See Home Ins. Co. v. Hartshorn, 128 Miss. 282, 91 So. 1. It also affirmatively appears that there was no written assignment of the cause of action, so, in this state of the record, there is no merit in the point.

The peremptory instruction should not have been granted, on the facts of this case, to the appellee.